

Debevoise & Plimpton LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
+1 202 383 8000

July 18, 2026

**Via Email / Under Seal**
The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *In re Grand Jury Subpoenas Dated July 10, 2026, No. 26 Misc. 352 (AS)*

Dear Judge Subramanian:

We submit this letter-motion on behalf of our clients, The New York Times Company ("The Times"), Julian E. Barnes, Eric Lipton, and Eric Schmitt, in the above-referenced matter and in response to the Government's letter filed at 2:42 PM today. We also write on behalf of two additional clients, Tyler Pager and Adam Goldman, who are reporters with The Times and, together with Mr. Barnes, Mr. Lipton, and Mr. Schmitt, co-authored the July 8 and July 9, 2026, articles in The Times regarding Air Force One (the "Journalists" and, together with The Times, the "Movants").

In its letter, the Government stated that the Department of Justice ("DOJ" or the "Department") issued subpoenas to third-party service providers for toll records and subscriber data for accounts believed to be associated with the Journalists.

The disclosure of additional subpoenas for confidential newsgathering information of the Journalists is deeply concerning, revealing yet another instance of the alarming pattern of conduct detailed in the Motion to Quash. These actions demonstrate abuse of the grand jury process, continued bad-faith attacks on the Journalists, violations of the Department's own internal regulations, and disregard for the law in this Circuit intended to protect critical First Amendment interests.

For the reasons set forth below, we respectfully request that the Court (1) allow Mr. Pager and Mr. Goldman to be added as movants in the pending Motion to Quash grand jury subpoenas dated July 10, 2026 (the "Testimonial Subpoenas");[1] (2) deem the Motion to Quash amended to include a request to quash the newly-disclosed grand jury subpoenas served on third-party phone service providers on July 10, July 14, and July 16, 2026, for records associated with the Journalists

---

[1] Mr. Pager and Mr. Goldman were not included as Movants in the Motion to Quash because the Government attempted but failed to serve them with the Testimonial Subpoenas. Unlike Mr. Barnes, Mr. Lipton, and Mr. Schmitt, they were therefore under no obligation to appear for testimony.

(the "Phone Provider Subpoenas"); and (3) stay enforcement of the Phone Service Provider subpoenas pending resolution of the Motion to Quash.

Movants are provisionally filing this letter-motion under seal in deference to the Court's supervisory role over the grand jury, but we respectfully request that this letter be immediately unsealed because disclosure of the information set forth herein is strongly in the public's interest and there is no basis for hiding it from public view.

### The Government's New Disclosures Raise Serious Concerns

Last evening—July 17, 2026, at approximately 9:00 PM—the Government requested a call with counsel. During that call (and on a second call this morning), the Government disclosed for the first time that, in addition to the Testimonial Subpoenas that are the subject of the pending Motion to Quash, the Government also served the Phone Provider Subpoenas on third-party providers for subscriber information and toll records corresponding to phone numbers that the Government evidently believed are associated with the Journalists.

The Government's letter is remarkable for what it discloses, but it is even more remarkable for what it omits. The Government did not inform the Court of the following critical facts:

- Some of the Phone Provider Subpoenas were served on July 10, 2026, *i.e.*, the same day as the Testimonial Subpoenas.

- One of the Phone Provider Subpoenas was served on July 14, 2026, after there had been multiple calls between Movants' counsel and the Government in which Movant's counsel had challenged the lawfulness of the Testimonial Subpoenas and the Government responded by encouraging "good faith discussions" intended to forestall or prevent judicial involvement.

- Another Phone Provider Subpoena was served on July 16, 2026—*after* the Motion to Quash had already been filed. The July 16 subpoena was accompanied by a non-disclosure order ("NDO") issued by a judge upon a sworn application from the Government.

- By the time that NDO application was filed, this matter had been opened by Judge Abrams and then assigned to this Court. The Government has not explained why the application went to a different federal judge in connection with a request for process directed at reporters who had a motion already pending. The Government has also not answered whether, in seeking the NDO, it informed the judge who signed the order either that the subpoenas sought journalists' phone records for the purpose of identifying confidential sources or that the matter was pending before a different judge.

- The identifiers for which the Government seeks information include phone numbers used by one Journalist's mother and two Journalists' spouses. The mother

2

is a mental health professional with confidential client relationships.  One of the two spouses is the general counsel of a major law firm.

- Two of the subpoenas seek records beginning on January 1, 2026, long before the events that are purportedly the basis for the Department's investigation.  That timeframe strongly suggests that the Department is using this investigation not to focus on any purported concerns arising from the July 8 and 9 articles, but instead to forage for information about the Journalists' source relationships more broadly.

This sequence of events and the timing of the Government's disclosures are deeply troubling for obvious reasons.  They raise pressing questions about the conduct of this purported national security investigation and confirm the absence of any regularity in the Department's use of the grand jury in this case.  They also highlight why this Court's intervention is urgently required.

## The Phone Provider Subpoenas Should Be Quashed

The Phone Provider Subpoenas should be quashed for the same reasons as the Testimonial Subpoenas.  The circumstances exude the Department's bad-faith effort to intimidate the Journalists and chill their ability to report on the Administration.  Like the Testimonial Subpoenas, several of the Phone Provider Subpoenas were issued immediately after the two articles were published, at the apparent behest of an enraged President and without first conducting any serious investigation; all of them issued within about a week of the publication of the articles.

As with the Testimonial Subpoenas, the Department did not even attempt to comply with its own regulations, which expressly apply to "subpoenas . . . to obtain from third parties communications records or business records of members of the news media."  28 C.F.R. § 50.10(b)(2)(i).  Most glaringly, the Government failed to provide notice until more than a week after the first Phone Provider Subpoenas were served and after the Journalists had already moved to quash the Testimonial Subpoenas.[2]  DOJ's media policy requires that members of the news media receive notice *before* DOJ seeks a third-party subpoena to obtain their records unless "such notice would pose a substantial threat to the integrity of the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily harm."  28 C.F.R. § 50.10(e)(1)(i).  Even if DOJ could justify failing to provide advance notice, the member of the media is entitled to it "*as soon as* it is determined that such notice will no longer pose a substantial threat to the integrity of the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily harm."  28 C.F.R. § 50.10(e)(2) (emphasis added).

Because the July 10 service of the Testimonial Subpoenas informed the Journalists about the existence of the investigation, there is no conceivable basis for DOJ failing to provide advance notice, let alone delaying notice until July 17.  And the Government informed counsel of the existence of these Subpoenas *not* because the regulations required it, but instead because,

---

[2]    *See* 28 C.F.R. § 50.10(e)(1)(i) (requiring "reasonable and timely notice" to the affected member of the news media "before the use of the subpoena[]").

according to the Government, prosecutors preparing the opposition to the Motion to Quash realized that the Phone Records Subpoenas are "relevant" under "Second Circuit decisions."

In addition to supporting a finding of bad faith, the Government's non-compliance calls into question the accuracy of the U.S. Attorney's testimony to the United States Senate in his confirmation hearing on July 15, 2026. In that hearing, the U.S. Attorney testified: "the procedures that we have in place to protect the First Amendment and protect the freedom of the press and not result in intimidation of journalists or the like were followed." He twice reiterated, "we followed the protocols," and "what I can tell you is that we followed those procedures and those procedures, for the reasons that I believe firmly and you believe protecting the freedom of the press, being the least intrusive possible, require consultation."[3]

Like the Testimonial Subpoenas, the Phone Provider Subpoenas must be quashed not only because they were issued in bad faith but also for the independent reason that they are barred by the reporters' privilege under binding Second Circuit precedent. *See The New York Times Co. v. Gonzales*, 459 F.3d 160, 168 (2d Cir. 2006) ("[A]ny common law or First Amendment protection that protects the reporters also protects their third party telephone records sought by the government."). On this record, the Government cannot come close to meeting its burden of making a "clear and specific showing" that the information sought by these subpoenas is "highly material and relevant," "necessary or critical," and "not obtainable from other available sources." Movants respectfully refer the Court to the arguments set forth in our Motion to Quash briefing, which we will supplement as necessary in reply to the Government's opposition.

The Government's letter itself confirms that the Government did not even consider this Second Circuit precedent when it should have done so: before it issued the subpoenas. Instead, the Government apparently began evaluating the legality of the subpoenas after it began preparing its response to the Motion to Quash.

### This Letter-Motion Should Be Unsealed Immediately

There is no basis for maintaining this letter-motion under seal. The information set forth above was conveyed by the Government to Movants' counsel on phone calls before the Government filed its letter. Movants are not subject to grand jury secrecy rules, *see* Fed. R. Crim. P. 6(e), and were not under any other confidentiality obligation such as a protective order. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983) ("Witnesses are not under the prohibition [of Rule 6(e)] unless they also happen to fit into one of the enumerated classes."). Movants are free to publicly disclose information shared with them by the Government, including in a letter-motion to the Court.

In any event, this letter-motion constitutes a judicial document to which a strong presumption of public access attaches. The Government cannot identify any countervailing and compelling interest in keeping it secret. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110,

---

[3]    S. Select Comm. On Intel, *Open Hearing: Nomination for the Honorable Walter "Jay" Clayton III to Be Director of National Intelligence*, at 01:10:45-01:13:53 (July 15, 2026), https://www.intelligence.senate.gov/2026/06/10/closed-briefing-intelligence-matters-74/.

120 (2d Cir. 2006) (courts must "determine[e] the weight of the presumption of access" and "balance competing considerations against it"); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997) ("The burden of demonstrating that a document . . . should be sealed rests on the party seeking such action[.]"); *Wenger S.A. v. Olivet Int'l Inc.*, No. 20 Civ. 1107 (AS), 2024 WL 3581796, at *1–2 (S.D.N.Y. June 25, 2024) (holding that judicial order was subject to presumption of public access and denying motion to seal because the "minuscule risk" from disclosure was "far outweighed by the public's right to know[]"). The public has a right to know this important information.

### Conclusion

Movants respectfully request that the Court (1) allow Tyler Pager and Adam Goldman to join as additional Movants, (2) deem the Motion to Quash amended to include a request to quash the Phone Provider Subpoenas, (3) stay enforcement of the Phone Provider Subpoenas pending a ruling on the Motion to Quash, and (4) immediately unseal this letter-motion and any corresponding order of the Court.

Respectfully submitted,

David A. O'Neil*
daoneil@debevoise.com
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
Tel: (202) 383-8000

*S/ Douglas S. Zolkind*
Douglas S. Zolkind
dzolkind@debevoise.com
Leah W. Rosenberg
lwrosenberg@debevoise.com
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909-6000

Julie A. Edelstein**
jedelstein@wiggin.com
WIGGIN AND DANA LLP
600 Massachusetts Avenue, N.W., Suite 375
Washington, D.C. 20001

5

Tel: (202) 800-2470

*Counsel for Movants*

\*Admitted *pro hac vice*.
\*\**Pro hac vice* forthcoming.

6