

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 20, 2026

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:    *In re Grand Jury Subpoenas Dated July 10, 2026*,**
> **26 Misc. 352 (AS)**

Dear Judge Subramanian:

The Government respectfully submits this letter regarding the above-captioned motion to quash grand jury subpoenas.

The movants' motion to quash rests on several inaccurate assertions regarding the confidential grand jury investigation in pursuit of which the subpoenas in question were issued. Without divulging classified or otherwise confidential and sensitive information, the movants are incorrect, for example, in asserting that the investigation lacks proper predication and that no investigative steps were taken prior to issuance of the subpoenas. And the movants are incorrect in asserting that the Government failed to comply with governing Department of Justice regulations regarding issuance of subpoenas to members of the media.

Importantly, the Government's investigation is ongoing, and there are particular investigative steps that the Government is seeking to take in the near term that the Government anticipates will be material to this Court's assessment of application of any qualified reporter's privilege here. Accordingly, the Government respectfully requests that the subpoenas be held in abeyance for two weeks during which time the Government will seek from the movants only preservation of records and not any testimony or documents.[1]

---

[1] Contemporaneously with the filing of this letter, the Government has notified the movants that, due to the continuing nature of the grand jury's investigation, the movants remain under an obligation to preserve all records relevant to this matter, including by disabling any autodelete functionality.

Hon. Arun Subramanian, U.S.D.J.
July 20, 2026
Page 2

## Applicable Law Regarding the Qualified Reporter's Privilege

### A. The First Amendment

#### 1. *Branzburg v. Hayes*

"The investigative power of the grand jury is necessarily broad if its public responsibility is to be adequately discharged." *Branzburg v. Hayes*, 408 U.S. 665, 700 (1972).[2] In the context of a grand jury subpoena, "the longstanding principle that the public has a right to each person's evidence is particularly strong," and the grand jury's "authority to subpoena witnesses is not only historic, but essential to its task." *Id.* at 688. And a grand jury investigation "is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023) (quoting *Branzburg*, 408 U.S. at 701).

In *Branzburg*, the Supreme Court held "in no uncertain terms," *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1146 (D.C. Cir. 2006), that the First Amendment does not shield reporters from answering questions before a grand jury as to their knowledge of criminal conduct, even as to the identities of their sources, *Branzburg*, 408 U.S. at 690, 697. The Court "decline[d]" to "interpret[] the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy." *Id.* at 690. "[W]e cannot," the Court explained, "seriously entertain the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof, on the theory that it is better to write about crime than to do something about it." *Id.* at 692. "Insofar as any reporter in these cases undertook not to reveal or testify about the crime he witnessed," the Court continued, "his claim of privilege under the First Amendment presents no substantial question." *Id.*; *see also United States v. Sterling*, 724 F.3d 482 (4th Cir. 2013) (rejecting reporter's privilege to withhold testimony in the criminal context where the government seeks, in good faith, evidence central to the prosecution).

The *Branzburg* Court accordingly "insist[ed] that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial," even if doing so would require revealing the identity of a confidential source. *Id.* at 690-91. The Court expressly rejected any requirement that the government "demonstrate[] some 'compelling need' for a newsman's testimony" as a prerequisite to obtaining it. *Id.* at 708; *see id.* at 680, 705-706. The Court rejected the argument that if reporters are "forced to respond to subpoenas and identify their sources or disclose other confidences, their informants will refuse or be reluctant to furnish newsworthy information in the future." *Id.* at 682. The Court reasoned that the "preference for anonymity" of informants who "desire to escape criminal prosecution" is "hardly deserving of constitutional protection." *Id.* at 691. And the Court explained that "[t]he crimes of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than

---

[2] Unless otherwise noted, all quotations omit internal quotation marks, citations, and previous alterations.

Hon. Arun Subramanian, U.S.D.J.
July 20, 2026
Page 3

when they are not." *Id.* at 692. In short, it is "the duty of a citizen, whether reporter or informer, to respond to [a] grand jury subpoena and answer relevant questions put to him." *Id.* at 697.

In so holding, however, the Court caveated its holding with the longstanding limited principle that investigations "instituted or conducted other than in good faith[] would pose wholly different issues," because "[o]fficial harassment of the press undertaken *not for purposes of law enforcement* but to disrupt a reporter's relationship with his news sources would have no justification." *Id.* at 707-08 (emphasis added); *see id.* at 709 (Powell, J., concurring) (observing that "no harassment of newsmen will be tolerated" and that First Amendment prohibits use of grand jury not in good faith).

## 2. Presumption of Regularity and Burden to Establish Pretext

"[A] grand jury subpoena issued through normal channels is presumed to be reasonable and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991). One basis for a subpoena to be quashed as unreasonable is that it was issued not for a legitimate purpose, but rather, for improper purposes such as harassment, animus, or vindictiveness. *Id.* at 299. To overcome the presumption of regularity, the movant "bears the burden of persuasion" and "must present particularized proof of an improper purpose," *Calk*, 87 F.4th at 186, that constitutes "a strong showing" that the grand jury is not acting "within the legitimate scope of its authority." *R. Enters.*, 498 U.S. at 301-02; *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) (holding that "speculations about possible irregularities in the grand jury investigation were insufficient to overcome the presumption that this investigation was for a proper purpose").

If a movant presents evidence appearing to call into question the validity of a grand jury subpoena, the Government may rebut that showing by explaining the "*bona fide* justifications" for the subpoena, which the movant must show were "mere pretext." *Calk*, 87 F.4th at 186-88.

## B. The Qualified Reporter's Privilege

The Second Circuit has recognized the existence of a common-law, qualified privilege for journalistic information. *See, e.g.*, *Gonzales v. Nat'l Broadcasting Co.*, 194 F.3d 29, 32-33 (2d Cir. 1999). Under *N.Y. Times v. Gonzales*, to overcome the privilege as to confidential information such as the undisclosed identity of a source in connection with a criminal investigation, the Government must show that the material sought is (1) "highly material and relevant"; (2) "necessary or critical to the maintenance of the claim"; and (3) "not obtainable from other sources." 459 F.3d 160, 169-70 (2d Cir. 2006).

In *N.Y. Times v. Gonzales*, the Second Circuit addressed whether a grand jury could obtain by subpoena records reflecting the identity of a government source in connection with an investigation into a potential criminal leak of information to reporters. 459 F.3d at 162-63. In that case, reporters had learned of forthcoming judicially authorized searches and asset seizures of two organizations that were the subject of an ongoing law enforcement investigation into terrorist financing. *Id.* at 163-64. The reporters then disclosed the forthcoming searches and seizures to the target organizations in order to seek their comment. *Id.* The grand jury subsequently began

Hon. Arun Subramanian, U.S.D.J.
July 20, 2026
Page 4

investigating the leak and whether it had constituted obstruction of justice or some other crime, and the Government indicated it intended to subpoena the reporters and their phone records to identify their source. *Id.*

Applying the above factors, the Second Circuit concluded that, on the facts of the case, the Government had overcome the journalists' qualified privilege. *Id.* at 169-72. The Court determined that the grand jury investigation was focused on "serious law enforcement concerns" because the Government "has a compelling interest in maintaining the secrecy of imminent asset freezes or searches lest the targets be informed and spirit away those assets or incriminating evidence." *Id.* at 170.

### Background of the Underlying National Security Investigation

On July 8, 2026, The New York Times (the "Times") published an article by the movants reporting, in part, on a new plane used by the President to travel to Turkey on July 6, 2026, and an older Air Force plane used by the President to leave Turkey on July 8, 2026. Mot. Ex. F. The July 8 article contained information reportedly provided by "people briefed on the new plane's capabilities, who spoke on the condition of anonymity to discuss sensitive security issues." Mot. Ex. F at 2. On July 9, 2026, the Times published an article by the movants further reporting on the alleged defensive capabilities of the new plane as compared to the older planes. Mot. Ex. G. The July 9 article asserted a "lack[]" of "defensive counter measures, including advanced antimissile capabilities" on the new plane that were present on the older planes. Ex. G at 1. According to the July 9 article, this information was provided by "multiple officials who have been briefed on how the [new Air Force One] jet was retrofitted." Ex. G at 1.

The above-referenced articles presented a substantial national security concern, including because they indicated potential leaks of classified or national defense information that appeared to have been provided to the Times when the President of the United States, senior officials, and reporters were flying in foreign airspace during a time of hostilities with a foreign adversary that has made clear its intent to harm the President and U.S. interests.[3]

### The Government Did and Continues to Comply with Department Regulations

In advance of issuing the subpoenas, the Government complied with Department regulations regarding issuance of subpoenas. In deciding to issue the subpoenas, the Government further considered information provided by other components of the U.S. Government concerning,

---

[3] In connection with any argument on this issue, the Government anticipates it may seek to hold a classified conference with the Court where it would seek the opportunity to submit classified materials to the Court on a sealed and *ex parte* basis, including declarations from relevant equity holder(s). *See, e.g., United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008); *see generally United States v. Saipov*, No. 17 Cr. 722 (VSB), Dkt. No. 212, at 5-6 (S.D.N.Y. Oct. 29, 2019) ("Courts routinely permit the Government to proceed *ex parte* 'when the substance of the classified information that the Government seeks to [] with[o]ld from discovery is explicitly discussed in the relevant motion.") (collecting cases).

Hon. Arun Subramanian, U.S.D.J.
July 20, 2026
Page 5

among other things, the underlying national security equities at stake. The Government also undertook certain investigative steps in advance of issuing the relevant subpoenas—the movants' allegations that no steps were taken are inaccurate. The investigation is ongoing.[4]

With respect to the subpoenas issued to third-party providers for phone numbers believed to be associated with the movants, the Government was authorized under Department regulations to delay disclosure of those subpoenas. The subpoenas were issued on July 10 (the same date as the testimonial subpoenas) with two subpoenas subsequently issued on July 14 and 16 because service providers indicated that the underlying phone number was not hosted by that provider. The July 16 subpoena issued to Google was accompanied by a non-disclosure order.[5] Although Department policy authorized non-disclosure of the subpoenas, in light of additional caselaw that the Government identified after the issuance of the subpoenas, the Government determined on July 17 that it was appropriate to alert counsel to those subpoenas so that counsel could advance any arguments—regardless of merit—in furtherance of their motion. The Government notified the movants of the subpoenas before any returns were received and instructed the providers to hold the returns in abeyance. No other subpoena or other legal process for accounts connected to the movants is pending. Any subpoenas served for a phone number not used by one of the movants was a result of information in a law enforcement database indicating that the phone number was associated with the movant. If the Government determines that these phone numbers were not used by the movants, the Government will not pursue the corresponding subpoena(s).

### Continuance of the Subpoenas' Return Date for Two Weeks Is Appropriate at This Time

The Government intends to take additional investigative steps in the next two weeks prior to seeking to compel testimony or any documents from the movants. In the interim, the Government seeks preservation of records from the movants while it pursues pending investigative

---

[4] While for the reasons set out above, the Government respectfully requests to hold the subpoenas in abeyance for a period of two weeks, it notes here that a description of particulars relevant to the investigation to date, including the time period for which the Government sought toll records, will likely require a classified conference and related briefing. It is possible, though not certain, that an adjournment could obviate the need for classified briefing.

[5] The Government submitted the proposed non-disclosure Order to Magistrate Judge Figueredo on Tuesday, July 14 and Judge Figueredo signed the non-disclosure Order later that same day, prior to the filing of the instant motion to quash and prior to this matter being re-assigned to Your Honor. The Government received the non-disclosure Order from Judge Figueredo the following day, on Wednesday, July 15, and the FBI served the non-disclosure Order on July 16, 2026. Accordingly, this matter was not assigned to this Court at the time of the application. Nonetheless, the Government's application did not address the ongoing engagement with counsel and inadvertently included language that the investigation was "not public" when the fact of the investigation was public, though the scope of the investigation was not. The Government apologizes for this oversight. As set out above, the Government notified counsel of the subpoenas and the Order on July 17, 2026, and has directed the providers to hold the returns in abeyance.

Hon. Arun Subramanian, U.S.D.J.
July 20, 2026
Page 6

leads—some of which may bear on the scope of the subpoenas, and moreover may be relevant to this Court's analysis of whether the reporter's privilege applies in this circumstance.

Without prejudice to arguments that national security equities may overcome any exhaustion requirement previously imposed in the Second Circuit, the Government is mindful that this Court will consider whether the information sought from the movants is available from any other source, and the Government believes certain investigative steps are appropriate at this time in advance of compelled testimony.

The Government does not seek sealing of any of the filings or court orders to date, including this letter. Pursuant to the Court's order, dated July 19, 2026, the Government separately is submitting to the Court a letter attaching all of the subpoenas issued in this matter, which filing will be under seal pursuant to Federal Rule of Criminal Procedure 6(e).

Respectfully submitted,

JAY CLAYTON
United States Attorney

by:  _/s/ Sean S. Buckley_
Sean S. Buckley
(212) 637-2232

cc:    David A. O'Neil, Esq.
Douglas S. Zolkind, Esq.
Leah W. Rosenberg, Esq.
Julie A. Edelstein, Esq.
*Counsel for Movants*