

Debevoise & Plimpton LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
+1 202 383 8000

July 22, 2026

**<u>Via ECF</u>**
The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: ***In re Grand Jury Subpoenas Dated July 10, 2026***, **No. 26 Misc. 352 (AS)**

Dear Judge Subramanian:

We write on behalf of Movants in the above-referenced matter, in response to the Government's letter dated July 20, 2026 (ECF No. 29 ("Gov't Ltr.")), and in further support of Movants' motion to quash grand jury subpoenas served on the Journalists (the "Testimonial Subpoenas") and on phone providers for records associated with the Journalists or their family members (the "Phone Provider Subpoenas" and, together with the Testimonial Subpoenas, the "Subpoenas") (ECF Nos. 22, 23, 27 (the "Motion to Quash")).[1]

**<u>Introduction</u>**

If the Court needed any further confirmation that the Department of Justice has abandoned regular order in these proceedings, the Government's six-page letter supplies it. The Government makes no effort to rebut—indeed it does not even acknowledge—the overwhelming evidence of bad faith, retaliatory animus, and harassment that pervades the record. And the Government effectively concedes that the Subpoenas violate binding Second Circuit precedent (not to mention DOJ's own regulations) because the Department issued them without first pursuing alternative investigative means. The Government's proposed solution to these conceded flaws is not to withdraw the Subpoenas but to request an extension for an arbitrary two-week period, during which, the Government says, it "may" file additional materials concerning the sensitivity of whatever information is purportedly the basis for the investigation and may take unspecified other actions, "some of which may bear on the scope of the subpoenas" and "may be relevant" to the legal issues. Gov't Ltr. at 5–6.

---

[1] Movants are The New York Times Company ("The Times") and reporters who co-authored articles in The Times on July 8 and July 9, 2026, regarding Air Force One (the "Articles"), Julian E. Barnes, Adam Goldman, Eric Lipton, Tyler Pager, and Eric Schmitt (the "Journalists").

The time for pursuing alternative investigative steps was before the Government sent armed agents to the Journalists' homes to serve subpoenas requiring their testimony and before it secretly sought phone records for them and their family members. And the time for submitting a justification for the Subpoenas has come and gone; it was Monday—the deadline imposed by this Court a week ago.

The consequence of this conduct must fall on the Government, not on the First Amendment rights of The Times and the Journalists or the public's interest in an informed citizenry. The Subpoenas have already harmed Movants and their ability to perform the work of investigating topics of national significance. It has chilled potential sources from coming forward even with non-sensitive, non-confidential information about the federal government for fear of being criminally targeted. *See* ECF No. 23 (Motion to Quash brief ("Mot.")), Ex. E (Lipton Decl.) ¶ 5. The Administration's goal is even broader—to intimidate the press itself from fulfilling its critical and constitutionally protected role of keeping the American public informed about its government. The prospect of compelled testimony—with an added threat of prosecution for obstruction of justice, *see* Gov't Ltr. at 1 n.1—should not hang over the Journalists' heads while the Government attempts to create a post-hoc justification for its tactics. In any event, the delay the Government requests would do nothing to eliminate the bad faith that renders the Subpoenas invalid.

If the Government will not do the right thing and withdraw the Subpoenas that it admits are unlawful, then this Court should quash them. Movants also respectfully submit that this Court should retain jurisdiction over this grand jury investigation so that any future effort to subpoena The Times or the Journalists in connection with the Articles can be reviewed by this Court in light of the proceedings here.

### The Government Concedes That the Subpoenas Are Unlawful

Although the Government's letter was filed as a "memorandum of law in opposition" to the Motion to Quash, the Government does not attempt to defend the Subpoenas on the merits. Conspicuously absent from the Government's letter is any argument that the Motion to Quash should be denied. Instead, the Government makes multiple concessions that individually and collectively mandate the relief that Movants request.

*First*, the Government admits that the Subpoenas fail under the governing legal standard. It acknowledges that "[t]he Second Circuit has recognized the existence of a common-law, qualified privilege for journalistic information," and that *New York Times Co. v. Gonzales*, 459 F.3d 160, 169–70 (2d Cir. 2006) ("*Gonzales*"), requires the Government to meet a three-part test "to overcome the privilege as to confidential information such as the undisclosed identity of a source." Gov't Ltr. at 3. One component of that test, the Government observes, is establishing that the information is "not obtainable from other sources." *Id.* (quoting *Gonzales*, 459 F.3d at 169–170). Despite acknowledging that it carries that burden, the Government does not even attempt to explain how the privilege has been overcome on these facts. Instead, what the Government asks of this Court is more time so that it can take "certain investigative steps," evaluate "whether the information sought from the movants is available from any other source," and thus try to satisfy the Second Circuit's "exhaustion requirement." *Id.* at 5–6. The Government's concession that it did not take this action before issuing the Subpoenas is a stark

and stunning admission that the Subpoenas violate the law of this Circuit. It alone provides more than sufficient grounds for the Court to grant the Motion to Quash.

*Second*, faced with a sequence of events that makes clear the Department issued the Subpoenas as a first step immediately after the Articles were published, the Government provides no explanation of its conduct. It merely offers the conclusory assertions that it is "incorrect . . . that no investigative steps were taken prior to issuance of the subpoenas," Gov't Ltr. at 1, and that "the movants' allegations that no steps were taken are inaccurate," *id.* at 5. Yet the Government did not identify any of these purported investigative steps—even in an *ex parte* submission to the Court.

*Third*, the Government does not contest that what happened here departs radically from longstanding practice. The Department historically has issued a vanishingly small number of subpoenas seeking the disclosure of reporters' confidential sources. In those few instances, the Department has taken that extraordinary step only as a last resort.[2] *Gonzales* is illustrative. There, the Department sought to subpoena the reporters' phone records only after years of investigating and engaging in good-faith discussions with the newspaper. *See* Mot. at 26–28. Even after the Second Circuit permitted the subpoenas to proceed, the journalists had the opportunity to review the responsive records in advance and to identify phone numbers that were unrelated to the investigation. *See N.Y. Times Co. v. Gonzales*, 1:04-cv-07677-RWS, ECF No. 33 (S.D.N.Y Nov. 30, 2006). The Government makes no effort to argue that the process here bears any resemblance to anything the Department has done before.

*Fourth*, the Government does not address, much less challenge, Movants' extensive arguments, supported by the Journalists' declarations, that the Subpoenas were issued in bad faith. Mot. at 15–18. Movants' fundamental contention—that this case is a straightforward application of *Branzburg's* prohibition on bad-faith subpoenas to members of the press—is left entirely unrebutted.

*Fifth*, the Government makes no effort to support its conclusory assertion that "[i]n advance of issuing the subpoenas, the Government complied with Department regulations regarding issuance of subpoenas." Gov't Ltr. at 4. Movants identified four discrete grounds on which the

---

[2]    Before seeking a warrant for reporter James Rosen's email account in the Stephen Kim investigation, for example, the FBI had identified Mr. Kim as a target; reviewed access logs, communications records, computer data, and email accounts of non-journalists; and interviewed Kim. *See generally* Aff. in Support of Application for Search Warrant, *In re Search Warrant for E-Mail Account [Redacted] Maintained on Computer Servers Operated by Google, Inc.*, No. 1:10-MJ-00291-AK, ECF No. 20-1 (D.D.C. Nov. 7, 2011). Likewise, before subpoenaing telephone records of Associated Press reporters in the Donald Sachtleben investigation, the government represented that it had conducted more than 550 interviews and reviewed tens of thousands of documents. Letter from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Just., to Gary B. Pruitt, President & CEO, Associated Press (May 14, 2013), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/dag-letter-to-ap-president-pruitt.pdf.

3

Testimonial Subpoenas violated DOJ policy, *see* Mot. at 20–22; the Government offers no response to any of them.[3]

Nor does the Government have any response to Movants' argument that DOJ policy required notice of the Phone Provider Subpoenas to the Journalists no later than July 10, 2026, when the Journalists were made aware of the grand jury investigation. *See* ECF No. 27 at 3; *see also* 28 C.F.R. § 50.10(e)(2) (requiring notice to the member of the news media "as soon as it is determined that such notice will no longer pose a substantial threat to the integrity of the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily harm"). The Government's silence confirms that the Department did not comply with its own policy and highlights the bad faith that infuses the Subpoenas.

*Sixth*, the Government concedes that it made material misstatements to Magistrate Judge Figueredo on July 14, 2026, in connection with seeking a non-disclosure order for one of the Phone Provider Subpoenas. Gov't Ltr. at 5 n.5. The Government acknowledges that it failed to inform Judge Figueredo that the Government was in contact with Movants' counsel and knew that counsel was challenging the lawfulness and propriety of the Subpoenas. *Id.* Rather, the Department represented to Judge Figueredo that the grand jury investigation was "not public" even though the Journalists had been served on July 10, the existence of the Subpoenas had been widely reported in the press, and DOJ had even confirmed on the record that it was conducting a leak investigation. The Government says nothing about whether it informed Judge Figueredo that the Phone Provider Subpoena at issue sought phone records of a member of the news media, but the Government admits that it served this subpoena on July 16—*after* the Motion to Quash had been filed and the matter was pending before this Court.

*Seventh*, the Government offers no response to Movants' argument that the information in the Articles about the security issues with the new Air Force One was widely known, readily observable, and easily inferred from material in the public domain. *See* Mot. at 22–24. Instead, the Government merely asserts—without so much as providing a declaration in support—that the Articles "presented a substantial national security concern" because "they indicated potential leaks of classified or national defense information." Gov't Ltr. at 4. This caveated, conclusory assertion should give the Court no confidence that the Department has been conducting a genuine investigation of potential violations of the Espionage Act, as opposed to using the grand jury process to harass, intimidate, and retaliate against members of the press. Events of the last few days confirm that the general statements in the Articles are not the stuff of a criminal investigation.[4]

---

[3]   The Government disputes that "*no* investigative steps were taken prior to issuance of the subpoenas." Gov't Ltr. at 1 (emphasis added). The regulations require that it make "*all* reasonable attempts to obtain the information, communications records, or business records from alternative sources." 28 C.F.R. § 50.10(c)(4)(ii) (emphasis added).

[4]   On July 19, the President announced that the Qatari jet was being taken out of commission so that it could be "maxed out"—in other words, properly retrofitted with the safety measures that use of an airplane as Air Force One requires. *See* Maggie Haberman, *Trump Says New Air Force One Will Be Taken Out of Service to Be 'Maxed Out,'* N.Y. TIMES (July 19, 2026), https://www.nytimes.com/2026/07/19/us/politics/trump-air-force-modifications.html;   *see*

The Government's letter thus reinforces all the reasons for which Movants are seeking to quash the Subpoenas. The Subpoenas were issued in a bad faith effort to harass, intimidate, and retaliate against members of the press for reporting on subjects the President finds embarrassing. The Subpoenas fail to overcome The Times's and Journalists' privilege under Second Circuit case law. They are therefore invalid, and the Court should quash them.

### The Court Should Quash the Subpoenas Now, Not Hold Them "In Abeyance"

The Government's request to hold the Subpoenas "in abeyance" for two weeks should be rejected because the Subpoenas are unlawful. There is only one remedy appropriate in this situation: the Subpoenas should be quashed. To extend the status quo would be to prolong the chilling effect that is already interfering with Movants' ability to investigate the truth and serve the public with access to information that only robust newsgathering makes possible. And providing the Government a further reprieve would do nothing to cure the deficiencies in the Subpoenas. The same bad faith that doomed the Subpoenas the day they were issued will still taint them in two weeks. The Government is responsible for issuing premature subpoenas and then failing to justify them, and the Government should be held responsible for its conduct.

The Government alludes to the possibility of submitting "classified briefing" in the event that it must provide "a description of particulars relevant to the investigation to date." Gov't Ltr. at 5 n.4. But the Government had ample opportunity to make such a filing in connection with its opposition to the Motion to Quash. It opted not to do so and must base its case on the existing record. The Government offers an unelaborated observation that "an adjournment could obviate the need for classified briefing," but it does not actually request an adjournment. *Id.* To the extent this footnote is interpreted as a request for an adjournment of the hearing set for tomorrow, Movants strenuously object.

If the Court grants the Motion to Quash, Movants also respectfully request that the Court expressly retain jurisdiction over this grand jury investigation. The Government has made clear that its investigation is ongoing, and any future efforts to subpoena The Times or the Journalists in connection with the Articles should be reviewed by this Court in light of these proceedings. *See, e.g.*, *In re Grand Jury Subpoenas to the Off. of the N.Y. State Att'y Gen.*, 814 F. Supp. 3d 284, 299 (N.D.N.Y. 2026) (Schofield, J., sitting by designation) ("The court's role in 'ensuring the regularity of the grand jury process is especially important because of the risks for abuse that inhere in proceedings over which trial and appellate courts rarely have insight.'" (quoting *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023)).

### Conclusion

The Subpoenas are unlawful and should be quashed. The Government's proposal of a two-week delay is incompatible with the role of a robust press in a free society, inconsistent with the

---

*also* Image posted by The White House (@WhiteHouse), X, *PLANEMAXXING* (July 20, 2026, 3:34 PM), https://x.com/WhiteHouse/status/2079288738899775514. The President's public confirmation that security upgrades to the Qatari jet are necessary is an official acknowledgement of the general information that the Articles reported.

First Amendment and the reporters' privilege, and insufficient to cure the bad faith that drove the Department to issue the Subpoenas in the first place.

Respectfully submitted,

_S/ David A. O'Neil_
David A. O'Neil*
daoneil@debevoise.com
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
Tel: (202) 383-8000

Douglas S. Zolkind
dzolkind@debevoise.com
Leah W. Rosenberg
lwrosenberg@debevoise.com
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909-6000

Julie A. Edelstein*
jedelstein@wiggin.com
WIGGIN AND DANA LLP
600 Massachusetts Avenue, N.W., Suite 375
Washington, D.C. 20001
Tel: (202) 800-2470

_Counsel for Movants_

*Admitted _pro hac vice_.

6